UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL KEILEN LINVILLE, JR., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:18-cv-2135-MCE–KJN <br><br> FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT <br><br> (ECF Nos. 19, 24) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Title XVI supplemental security income.[1] In his summary judgment motion, Plaintiff primarily contends the Administrative Law Judge ("ALJ") erred in weighing medical evidence and testimony regarding Plaintiff's mental impairments, and erred in formulating Plaintiff's residual functional capacity. The Commissioner opposed and filed a cross–motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the Court recommends DENYING the Commissioner's motion for summary judgment, GRANTING Plaintiff's motion for summary judgment, and REMANDING this case for further proceedings.

///

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) for findings and recommendations. (See ECF Nos. 8, 9.)

1

# I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

Plaintiff applied for supplemental security income on October 29, 2013. (Administrative Transcript ("AT") 20, 87.) Plaintiff claimed the following medical conditions: "Bilateral arm pain, abdominal pain, hepatitis C, depression, chronic insomnia, impaired cognition, a peculiar affect, and sustained remission . . . from alcoholism and illicit drugs." (AT 307.) Plaintiff's application was denied initially and again upon reconsideration. (AT 87, 106.) Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 123–5.) Plaintiff began working again in April 2016, thereby closing the period for which he could seek disability. (AT 87.) At an August 28, 2017 hearing, Plaintiff testified about his conditions, and the ALJ heard testimony from a vocational expert regarding Plaintiff's ability to work. (AT 40–74.)

On September 18, 2017, the ALJ issued a decision determining that Plaintiff was not disabled for the relevant period. (AT 20–31.) At step one, the ALJ concluded that while Plaintiff had engaged in substantial gainful activity starting in April 2016, he had not done so between then and October 2013—Plaintiff's application date. (AT 22.) At step two, the ALJ found

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571–76; Bowen v. Yuckert, 482 U.S. 137, 140–42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Plaintiff to have had the following severe impairments during the relevant period: Borderline Intellectual Functioning and Hepatitic C. (Id.) However, the ALJ determined at step three that these impairments did not meet or medically equal the severity of a listed impairment. (AT 23) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1).

Based on this information, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he could "perform simple, unskilled tasks[, with] no more than occasional interaction with coworkers and the public and where interaction with the public is not a primary component of the job." (AT 25.) In reaching this conclusion, the ALJ stated that despite the temporal limitation of the claim (between October 2013 and April 2016), he "considered the complete medical history consistent with 20 C.F.R. 416.912(d)."[3] The ALJ stated this included considering Plaintiff's expressed symptoms, the objective medical evidence in the record, and the opinion evidence given by the examining and consulting physicians. (AT 25–29.) Relevant here, the ALJ found that while Plaintiff's "medically determinable [mental] impairments could reasonably be expected to produce the above–alleged symptoms," the statements from Plaintiff and his family "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AT 27.) Additionally, the ALJ rejected an examining psychiatrist's opinion—that Plaintiff was severely limited in being able to work safely and deal with routine changes— because it was inconsistent with his return to work in April 2016. (AT 29.) Instead, the ALJ assigned "great weight" to the non–examining psychiatrist's opinion that Plaintiff can "interact in work–like settings and [can] complete a workday and workweek." (AT 28.) Ultimately, the ALJ concluded at steps four and five that while Plaintiff was incapable of performing past relevant

---

[3] 20 C.F.R. § 416.912(d) (2012) read as follows:
> Before [the Commission makes] a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.

3

work, there were jobs existing in significant numbers in the national economy that Plaintiff could still perform given the restrictions detailed in the RFC. (AT 29–31.)

On June 26, 2018, the Appeals Council denied Plaintiff's request for review. (AT 6–11.) Plaintiff then timely filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross–motions for summary judgment. (ECF Nos. 1, 19, 24, 25.)

## II. <u>STANDARD OF REVIEW</u>

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." <u>Buck v. Berryhill</u>, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Edlund v. Massanari</u>, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." <u>Id.</u> The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." <u>Tommasetti v. Astrue</u>, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. <u>Buck</u>, 869 F. 3d at 1048.

## III. <u>ISSUES PRESENTED</u>

Plaintiff alleges multiple errors on the ALJ's part, primarily arguing that the ALJ cherry–picked the record in crafting the RFC. (ECF No. 19 at p. 2.) This includes plaintiff's argument that the ALJ failed to give specific and legitimate reasons for rejecting portions of the examining physician's opinion, mischaracterized or ignored other medical opinions and evidence, and improperly rejected Plaintiff's subjective statements (and the statements of multiple third–parties) regarding his mental limitations. Plaintiff also argues the ALJ failed to fully develop the record, and the RFC does not reflect the evidence the ALJ purportedly relied upon, thereby affecting the Vocational Expert's analysis. Plaintiff maintains that once Dr. Kemp's opinions are credited as true, the Court must remand for benefits. Alternatively, Plaintiff indicates at times that a remand for further proceedings is appropriate.

The Commissioner counters each of Plaintiff's arguments, contending that substantial

evidence supported the ALJ's assessment of Plaintiff's mental functions. (ECF No. 24.) Thus, the Commissioner maintains the ALJ's opinion should be affirmed.

**IV.     LEGAL STANDARDS**

  A. Evaluation of Medical Source Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202. The medical opinion of a claimant's treating doctor is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record. 20 C.F.R. § 404.1527(c)(2)–(6).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989). Conversely, to reject an uncontradicted opinion of a treating or examining doctor, the ALJ must state "clear and convincing reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

////

////

5

B. Evaluation of a Claimant's Testimony and Third–Party Reports

In evaluating the extent to which an ALJ must credit the claimant's report of his symptoms, the Ninth Circuit has set forth the following two–step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels, 874 F. 3d at 655 (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014).

To reject third-party reports of a claimant's impairments, the standard is much lower: an ALJ need only "give reasons that are germane to each witness." Id. (citing Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)).

**V.    DISCUSSION**

Plaintiff begins his arguments by assigning error to a key portion of the examining psychiatrist Dr. Kemp's medical opinion. (See ECF No. 19 at pp. 28–32.) In the decision, the ALJ states:

> After the psychological examinations of the claimant, Dr. Kemp opined that the claimant is capable of performing simple and repetitive tasks; he is mildly limited in his ability to maintain regular attendance due to his depression; **his ability to perform work activities in a safe manner is severely impaired**; his ability to maintain social functioning is mildly to moderately impaired due to depression; his ability to interact with others is moderately impaired due to depression and memory deficits; and **his ability to deal with changes in a routine work setting is severely impaired**. I grant these opinions some weight as Dr. Kemp had two opportunities to personally examine the claimant, this opinion is within her area of specialty as a clinical psychologist, and her opinion is based at least in part on objective clinical testing. **However, I grant little weight to the opinion that the claimant is severely limited in his ability to perform work activities in a safe manner and deal with changes in a routine work setting, as this opinion is not**

////

**consistent with the claimant's ability to return to work on a full time basis in April 2016 without evidence of significant medical improvement**.

(AT 29, citations omitted and emphasis added.) In contrast to Dr. Kemp's opinion, the ALJ assigned great weight to the medical opinion of Dr. Kang, the state agency psychological consultant, who opined that Plaintiff had no such severe limitations and could otherwise "interact in work-like settings and . . . complete a workday and workweek." (AT 28.) As Dr. Kemp's "severely impaired" opinions were contradicted by some other medical evidence, the ALJ needed only to provide specific and legitimate reasons for discounting the rejected portions. Lester, 81 F. 3d at 830. Plaintiff argues the ALJ failed at this analysis for multiple reasons, primarily analogizing to Moore v. Commissioner of Social Sec. Admin, 278 F.3d 920, 925 (9th Cir. 2002).

In Moore, the Ninth Circuit confronted a similar issue with how the ALJ discounted medical opinion evidence. Therein, the plaintiff sought disability benefits for a closed period, and relied upon the opinions of two mental health specialists for support. 278 F.3d at 923. These specialists opined that because of the plaintiff's developmental disabilities and a recent personal tragedy, the plaintiff was severely restricted in his ability to function at work. Id. The specialists opined that with time and vocational rehabilitation, the plaintiff's condition might improve. Id. Other psychiatrists examining the plaintiff imposed no such severe restrictions, and so the ALJ was required to provide specific and legitimate reasons for rejecting the "severe" opinions from the specialists. Id. at 924. The ALJ stated that since the plaintiff was able to return to work after the closed period, the specialists' severe restrictions were "ultimately theoretical"; the ALJ rejected these opinions and denied benefits. Id. The Ninth Circuit reversed, holding that in light of the Social Security Act's goals of "encourag[ing] individuals who have previously suffered from a disability to return to [work]," it was not a specific and legitimate reason to reject medical opinions solely because the plaintiff's condition improved and he was again able to work. Id. at 925. Because the medical evidence indicated the plaintiff had recovered from his impairment, the Ninth Circuit reversed and remanded for benefits. Id.

////

Similar to Moore, Dr. Kemp found—after two examinations in 2014—that Plaintiff's ability to "perform work activities in a safe manner" and "deal with changes in a routine work setting" was severely impaired. (See AT 425–35; 1017–20.) In discounting these opinions, the ALJ merely stated that since Plaintiff had returned to work at the end of the closed period in April 2016, and otherwise had no evidence that his mental conditions had improved, Dr. Kemp's opinions were inconsistent with the record. (AT 29.) However, as Plaintiff points out, there does appear to be some evidence of improvement in Plaintiff's condition after his Hepatitis C treatment concluded and after he "regularly engaged in group counseling and [] other support services." (ECF No. 19 at p. 29.) For example, Plaintiff reported in 2016—some two years after Dr. Kemp's examinations—that his mental health issues were "in the past" and that he was "doing fine." (See AR 1104, 1106.) In fact, the Commissioner aptly summarizes many of Plaintiff's improvements near the end of the closed period in the response brief:

> In November 2016, he reported a good mood since he stopped using drugs in 2013. March 2016 psychotherapy treatment notes, reflect that while Plaintiff had not attended therapy in several months, clinical findings were grossly normal. The therapist found that Plaintiff was punctual, attentive, and active in the guided discussion; he showed interest and understanding through his contributions.

(ECF No. 24 at p. 3, citing AT 1055, 1066–69.) It may be, as the Commissioner argues, that these findings are "similar to earlier and later findings," and that Plaintiff's "chief mental health issue[—]borderline intellectual functioning[—is not] an impairment known for improvement." (See Id. at p. 9.) However, Plaintiff is correct that the ALJ did not offer these as reasons for discounting Dr. Kemp's opinions on the subject, and the Court cannot engage in "post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). Because the record contains some evidence that Plaintiff's condition may have improved between the time Dr. Kemp performed her exams in 2014 and when Plaintiff returned to work, the ALJ was required to provide specific and legitimate reasons—beyond just that Plaintiff became employed after the closed period—for rejecting Dr. Kemp's opinion of Plaintiff's "severe impairments." Moore, 278 F.3d at 925; see also Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394–95 (9th Cir.

1984) ("ALJs "need not discuss all evidence presented to [them]. Rather, [they] must explain why significant probative evidence has been rejected."); Diedrich v. Berryhill, 699 F. App'x 726 (9th Cir. 2017) (reaffirming the proposition).

Regarding remand, the Court recognizes Plaintiff's request to credit Dr. Kemp's opinions as true and remand with benefits. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). However, as indicated above, the undersigned cannot say that additional proceedings would have no utility. Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2016). Unlike Moore, the record here is not so clear that the improvements Plaintiff points to are of the kind that will alter the ALJ's analysis. It may be, as the Commissioner contends, that Plaintiff's mental impairments have remained consistent throughout the closed period. If this so, this case would be at odds with Moore, and would call into question why Plaintiff could not have worked, say, "sweeping and mopping floors at a bottling plant" three years sooner—just as he did in 2016. (ECF No. 24 at p. 8, citing AT 49.) This ambiguity is for the ALJ, and not the Court, to resolve. Edlund, 253 F. 3d at 1156 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.").

Further proceedings are required given some of Plaintiff's other arguments. For example, the Ninth Circuit has consistently stated that ". . . an examining physician's opinion carries more weight than a non-examining physician's opinion." Holohan, 246 F. 3d at 1202. To be sure, the ALJ is allowed to take the opinions of non–examining physicians when they are consistent with the medical evidence. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). However, given that the ALJ will be tasked with weighing Plaintiff's improvements against the "severe" impairments observed by Dr. Kemp, the ALJ will also need to reconsider Dr. Kang's and Dr. Corkill's opinions in this context. The same holds true for the need to reincorporate the remaining medical evidence, including Plaintiff's GAF scores, which the Ninth Circuit has noted can be "a useful measurement." Garrison v. Colvin, 759 F.3d 995, 1003 (9th Cir. 2014). This also should include the medical records from the VA, including—for purposes of considering the longevity of Plaintiff's impairments—those records generated prior to the beginning of the closed period. See Attmore v. Colvin, 827 F.3d 872, 877 (9th Cir. 2016) ("The ALJ was required,

however, to examine this evidence in the broader context of [the plaintiff's] impairment."). Additionally, the ALJ will be required to reconsider the testimony of Plaintiff (regarding his subjective symptoms) and the third–party affiants. All of this reweighing may of course require a reformation of Plaintiff's RFC and resubmission of it to a vocational expert. Given this context, the Court will not rule on the remaining points raised in Plaintiff's brief. (<u>See</u> ECF No. 19 at points 7.2–7.9.) The ALJ is reminded to "include all of the claimant's functional limitations, both physical and mental," <u>Flores v. Shalala</u>, 49 F.3d 562, 570 (9th Cir. 1995), and be precise if distinguishing between levels of skilled work. <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174-1176 (9th Cir. 2008). Simply, on remand, the ALJ should carefully follow Ninth Circuit precedent in assigning weight, as well as "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." <u>Magallanes</u>, 881 F. 2d at 751.

Finally, the Court is confident that the ALJ is aware of the duty to "fully and fairly develop the record." <u>Celaya v. Halter</u>, 332 F.3d 1177, 1183 (9th Cir. 2003). Should Plaintiff wish to submit unredacted records or medical expert testimony, he can do so on remand. <u>See</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 459–60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

**<u>RECOMMENDATIONS</u>**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The Commissioner's motion for summary judgment (ECF No. 24) be DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 19) be GRANTED;
3. This matter be REMANDED for further administrative proceedings; and
4. The Clerk be directed to enter judgment in Plaintiff's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: January 9, 2020

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

linv.2135